UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DEBORAH MULCAHEY,                              Case No. 2:24-cv-7

        Plaintiff,                              Hon.  Robert J. Jonker
                                        U.S. District Judge
    v.

CHOCOLAY TOWNSHIP, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses a motion to dismiss filed by the five remaining Defendants in the case on November 11, 2024.  (ECF No. 53.)

Plaintiff in this matter, Deborah Mulcahey, a resident of Chocolay Township, Michigan, filed her initial complaint on January 16, 2024.  (ECF No. 1.)  The Court subsequently granted a motion to amend her complaint, which is filed in ECF No. 52. (ECF No. 51.)

In general terms, Mulcahey's amended complaint alleges that her neighbor as well as Chocolay Township civilian and law enforcement officials conspired to violate her rights, and actually did violate her rights, by filing falsified criminal charges against her, which resulted in her arrest and subsequent release on bond.  Plaintiff claims these actions violated her rights under the U.S. Constitution as well as laws of the State of Michigan.

1

After receiving briefing from the parties, the Court, in an order dated October 29, 2024:

- dismissed Count 4 of Plaintiff's amended complaint – Plaintiff's conspiracy claim – for failure to state a claim,

- declined to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts three, five, six and seven of the amended complaint), thereby dismissing those claims without prejudice, and

- dismissed Defendant Hillstrom from the case.

(ECF No. 51, PageID.356.)

Five Defendants remain in the case at this point.  They are:

- Chocolay Township, Michigan,

- Scott Jennings, who was the Chief of Police for Chocolay Township Police Department,

- Police Officer Nicholas Carter of the Chocolay Township Police Department,

- Dale Throenle, the Chocolay Township Planning and Zoning Administrator, and

- William DeGroot, the Chocolay Township Manager.

(*Id.*)

The remaining Counts are set forth in the table below.

| Count | Basis | Defendants |
|-------|-------|------------|
| 1 | 42 USC § 1983, asserting violations of 4th and 14th Amendments by persons acting under color of state law | Chief Jennings, Officer Carter, Administrator Throenle, Manager DeGroot |

| Count | Basis | Defendants |
|-------|-------|------------|
| 2 | 42 USC § 1983, asserting violations of 4th Amendment by persons acting under color of state law | Chocolay Township |
| 8 | 42 USC § 1983, asserting malicious prosecution in violation of the 4th Amendment[1] | Chocolay Township, Chief Jennings, Officer Carter, Administrator Throenle, Manager DeGroot |

Upon review of all pleadings pertinent to Defendants' motion to dismiss, the undersigned respectfully recommends that the Court grant the motion in part and deny it in part as follows:

- grant the motion as to Defendants DeGroot and Throenle and dismiss them from the case;

- grant the motion as to Chocolay Township and dismiss it from the case; and

- deny the motion as to Chief Jennings and Officer Carter.

If the Court adopts this recommendation, Chocolay Township, DeGroot and Throenle will be dismissed from the case. The case will continue on Counts 1 and 8 against Chief Jennings and Officer Carter.

## II. Discussion

### A. Legal Standards

---

[1]      Count 8 does not expressly reference Section 1983 or any other basis for federal jurisdiction. (*See id.*, PageID.371.) Nevertheless, the undersigned interprets Count 8 to allege a Section 1983 violation because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations. *See Sanders v. Prentice-Hall Corp. Sys., Inc.*, No. 97-6138, 1999 WL 115517, at *1 n.2 (6th Cir. Feb. 8, 1999) ("This circuit has held that constitutional violations by state officials are not cognizable directly under the constitution (or by virtue of general federal question jurisdiction) because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations."); *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (setting forth the elements of a malicious prosecution claim under § 1983 when the claim is based on a violation of the Fourth Amendment).

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*,

487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### B.  Review of Allegations

#### 1.  Summary of Plaintiff's Amended Complaint

The starting point in analyzing a Rule 12(b)(6) motion is, of course, the plaintiff's complaint.

Plaintiff Mulcahey's amended complaint provides background information on her involvement in the community.  (ECF No. 52, PageID.359.)  She notes that her "activism" led some Chocolay Township employees to view her as a nuisance and for Defendant Throenle to be "especially irritated" by her because her activism "created more work for him."  (*Id.*, ¶ 11.)

Plaintiff chronicles her contact with Chief Jennings on June 2, 2021 (*id.*, ¶ 16), her appearance at the Sheriff's Department the next day (*id.*, ¶ 17), and her subsequent release on a set of bond conditions she found to be draconian (*id.*, PageID.360-61, ¶¶ 18-24).

In Paragraph 24, she reiterated her allegation that Throenle did not like her activism and that Chief Jennings also did not appreciate her activities:

> 24.    The conditions also effectively prohibited Mrs. Mulcahey from exercising her constitutional right to participate in local government affairs by prohibiting her from being in direct or indirect contact with Mr. Throenle; and as such prohibiting her from going to the Chocolay Township Hall. Mr. Throenle, as the Chocolay Township planning and zoning administrator, attends and essentially leads monthly Planning Commission public meetings in which Mrs. Mulcahey regularly participated. Chocolay Township did not like Mrs. Mulcahey's activism in local governmental affairs. Again, Mr. Throenle complained that Mrs. Mulcahey created more work for him. Chief Jennings described Mrs. Mulcahey as "a pain in the [\*\*\*]" to Chocolay Township. Chief Jennings admitted that, based on the bond conditions for Mrs.

(*Id.*, PageID.361 (¶ 24).)

Also in Paragraph 24, Plaintiff asserts that three of the defendants in this case – Chief Jennings, Manager DeGroot and Mr. Throenle – discussed keeping Plaintiff out of public meetings.  They also allegedly acknowledged that the bond conditions imposed by the state court would have that effect.  That portion of ¶ 24 is shown below.

> participating in local government affairs. Other representatives of Chocolay Township openly discussed ways to prevent Mrs. Mulcahey from participating in local government. One representative even publicly discussed whether it was possible to obtain an injunction against Mrs. Mulcahey preventing her from participating in local government. As Manager of Choclay Township, Mr. DeGroot was involved in some of the foregoing discussions. One of these conversations was with Chief Jennings and Mr. Throenle during which Mr. DeGroot was advised of the bond conditions prohibiting contact with Mr. Throenle. Mr. DeGroot knew there was no basis for that condition based on information he received from Mrs. Mulcahey. Mr. DeGroot, Mr. Throenle and Chief Jennings apparently determined that Mr. DeGroot should contact Mrs. Mulcahey to purportedly assure her that she could contact him to discuss any issues concerning Chocolay Township. Mr. DeGroot never contacted Mrs. Mulcahey.

(*Id.*, PageID.362.)

Plaintiff also alleges that Chief Jennings personally wrote the police report relating to Hillstrom's complaint (*id.*, ¶ 27), but did not interview Plaintiff or Plaintiff's husband and did no further investigation (*id.*, PageID.363, ¶ 29).  Plaintiff asserts that Officer Carter then swore to the criminal complaint even though he had no knowledge of the underlying facts.  (*Id.*, ¶ 30.)

Plaintiff ultimately complains that Hillstrom's narrative was "long on soaring rhetoric" but "void of any substance supporting a stalking charge."  (*Id.*, ¶ 33.)  She then says that the actions that served as the basis for the complaint did not constitute stalking under Michigan law.  (*Id.*, PageID.364, ¶ 34.)  In Paragraph 35, she criticizes all of the defendants for failing to investigate Hillstrom's claims:

> 35.   Neither Defendants Chocolay Township, Chief Jennings, Officer Carter, Mr. DeGroot nor Mr. Throenle conducted any meaningful investigation into Mrs. Hillstrom's claims, or even simply verified if they were true. Each of them knew that Chocolay Township disapproved of Mrs. Mulcahey's regular participation in local government affairs. Each of them knew that these charges, and the resulting bond conditions, effectively prevented her from participating in local government affairs, as well as her ability to live in her home.

(*Id.*, PageID.364.)

In this same vein, Plaintiff says that DeGroot and Throenle knew or should have known *before the criminal complaint was filed* (1) that Hillstrom's allegations in the police report were false or made recklessly without regard for the truth, and (2) that further investigation was required.  (*Id.*, PageID.365, ¶ 41.)

Plaintiff alleges other acts that cast the investigation in a negative light:  (1) Defendants' failure to comply with a FOIA request (*id.*, PageID.364, ¶ 38), (2) Defendants' failure to interview neighbors or other possible witnesses (*id.*, PageID.365, ¶ 42), and (3) Defendants' failure to record conversations with Hillstrom in violation of Township policy (*id.*, PageID.364, ¶ 38 and PageID.365, ¶ 43).

Plaintiff asserts that the criminal case was dismissed days before the scheduled trial by *nolle prosequi*.  (*Id.*, PageID.365-66, ¶ 44.)

### 2.  Summary of Supplemental Materials

The Court may also consider other materials.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Here, supplemental materials were not attached to (1) Plaintiff's original complaint (ECF No. 1), (2) Plaintiff's amended complaint (ECF No. 52), (3) Defendant's motion to dismiss (ECF No. 53), or (4) Defendants' reply (ECF No. 58).

Defendants' motion for judgment on the pleadings (ECF No. 28), filed on June 4, 2024, included the following:

- A copy of a six-page Chocolay Township Police Department report, authored by Chief Jennings, dated April 19, 2021 (ECF No. 28-2), and

- A copy of the misdemeanor criminal complaint, authorized by Prosecutor Andrew Griffin on May 26, 2021, and signed by Officer Carter on May 27, 2021, which alleges that Plaintiff stalked Hillstrom on or about March 26, 2021 (ECF No. 28-3, PageID.215), and the accompanying misdemeanor warrant (*id.*, PageID.216).

The police report includes the text of correspondence from Hillstrom to the Chocolay Police Department on March 29, 2021 and April 19, 2021.  The report also documents police interviews with three witnesses as well as one suspect.

The complaint listed the following witnesses:

| Witnesses | | |
|---|---|---|
| LIZ HILLSTROM | CHIEF JENNINGS | DALE THROENLE |
| CAROL BROWN | HOWARD ELLIS | SHARON ELLIS |
| PERRY LAING | SHELIA LAING | JOHN PETERSON |
| ANN PETERSON | PAUL KNOX | |

(ECF No. 28-3, PageID.216)

The charging portion of the complaint is shown below:

The complaining witness says that on the date and at the location described, the defendant, contrary to law,

**COUNT 1:**  **STALKING**
did engage in a willful course of conduct involving repeated or continuing harassment of Liz Hillstrom, the conduct being such that would cause a reasonable person to feel intimidated, or threatened, or harassed, or molested, and such conduct did cause Liz Hillstrom to feel intimidated; contrary to MCL 750.411h.  [750.411H]
MISDEMEANOR:  1 Year and/or $1,000.00; up to 5 years probation

(*Id.*)

Plaintiff's response brief includes the following supplemental materials:

- ECF No. 56-1:  transcript of Jennings's deposition,

- ECF No. 56-3: Plaintiff's civil complaint against all the named defendants in this case, but filed in Circuit Court in Ingham County, Michigan, in November 2024,[2]

- ECF No. 56-4:  emails between Andrew Hillstrom and Throenle from September 2020 through March 2021, relating to Township ordinances and the Hillstroms' possible use of a tent or an RV/camper during construction on their property, and

- ECF No. 56-5:  a letter from Plaintiff to Throenle, dated April 6, 2020, in which Plaintiff advised Throenle that he is not allowed to visit the Plaintiff's property at any time "do to safety reasons."

In his deposition, Chief Jennings discussed his investigation and noted:

- that the prosecutor authorized the complaint (ECF No. 56-1, PageID.439),

- that Officer Carter signed the complaint (*id*.),

- that Officer Carter was not involved in the investigation (*id*., PageID.440), and

- that a magistrate also signed the complaint (*id*.).

**C. Analysis**

    **1.  Claims Against DeGroot and Throenle**

---

[2]    The undersigned notes that Plaintiff's civil complaint in Circuit Court in Ingham County includes allegations beyond those set forth in the operative complaint in this case, which is ECF No. 52.  The undersigned does not view this civil complaint as essentially another amendment to the complaint in this case and declines to consider the allegations set forth in Plaintiff's civil complaint in Ingham County for purposes of evaluating Defendants' motion to dismiss her amended complaint.

Township Manager DeGroot and Zoning and Planning Administrator Throenle are named as defendants in Counts 1 and 8 of the Amended Complaint. Count 1 alleges violations of the Fourth and Fourteenth Amendments to the U.S. Constitution by the individual defendants except Hillstrom. (ECF No. 52, PageID.366, ¶¶ 51-55.) Count 8 alleges malicious prosecution in violation of the Fourth Amendment. (*Id.*, PageID.371-72, ¶¶ 90-93.) Both of these claims are brought pursuant to 42 U.S.C. § 1983. (*See supra*, page 3, n.1 (noting that a malicious prosecution claim premised upon an alleged violation of the Fourth Amendment is brought pursuant to § 1983).)

As noted above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. The person acting under color law <u>must have been personally involved in the unconstitutional conduct</u>. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement is required for a supervisor to incur personal liability." *Id.*, (quoting *Miller v. Calhoun County,* 408 F.3d 803, 817 n. 3 (6th Cir.2005)). In addition, liability under Section 1983 cannot be premised on "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Furthermore:

> a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id.* (citations omitted).

11

With these standards in mind, the undersigned turns to the allegations against Township Manager DeGroot and Zoning and Planning Administrator Throenle in Counts 1 and 8.  First, simply stated, Plaintiff does not allege any unconstitutional conduct in which DeGroot and Throenle were personally involved.  For the purpose of this analysis, the undersigned accepts Plaintiff's allegations (1) that DeGroot and Throenle were not pleased with Plaintiff's activism, (2) that they found her to be a nuisance, (3) that they considered getting an injunction to keep her out of public meetings, and (4) that they were aware that her bond conditions would keep her out of meeting.  None of this, however, rises to the level of unconstitutional conduct. Plaintiff does not allege that DeGroot and Throenle conducted a criminal investigation, wrote a police report, submitted that report and a complaint, requested a prosecution of Plaintiff, and then obtained an arrest warrant.  Those were the steps that directly led to the charges against Plaintiff and her subsequent arrest, and those were the steps taken by the police officers in this case – Chief Jennings and Officer Carter.  Plaintiff simply does not allege that any of those law enforcement steps were carried out by DeGroot and Throenle personally.

Furthermore, and relatedly, Plaintiff does not even allege that DeGroot and Throenle had legal authority to do any of the specific law enforcement acts that led to her arrest, i.e. that they had the powers entrusted to law enforcement officers or peace officers under Michigan law.  Plaintiff describes DeGroot as the Manager of the township and Throenle as the Planning and Zoning Administrator.  (ECF No. 52,

12

PageID.358.)  Nothing in those titles suggests they had the powers entrusted to law enforcement or peace officers.

In short, Plaintiff fails to allege that DeGroot and Throenle personally participated in any of the potentially unconstitutional conduct alleged in Counts 1 and 8.

Second, Plaintiff does not allege facts indicating that DeGroot and Throenle had supervisory authority over Chief Jennings or Officer Carter that they used in an unconstitutional manner.  Plaintiff provides the titles for the jobs held by DeGroot and Throenle, but she provides no information establishing that DeGroot and Throenle had supervisory authority over Chief Jennings or Officer Carter <u>with respect to specific investigative and charging decisions</u>.  The obvious questions that come to mind are:  (1) did DeGroot and/or Throenle have authority to review specific charges against specific individuals *before* those charges were referred to the county's Prosecuting Attorney? (2) could they review police reports and decide whether an investigation needed further work? (3) were they responsible for training Chocolay Township police officers on law enforcement matters?  Plaintiff answers none of these questions.  The undersigned accepts that DeGroot and Throenle were supervisors within the Chocolay Township administrative hierarchy.  But that is not the same as supervisory authority over specific law enforcement investigative and charging decisions.  Thus, she has not established that DeGroot and/or Throenle had supervisory authority over Chief Jennings or Officer Carter with respect to specific investigations and charging decisions.

Third, even if DeGroot and/or Throenle had supervisory authority over these specific law enforcement steps, Plaintiff has not provided sufficient allegations that they used this authority in an unconstitutional manner.  The closest she comes to a sufficient allegation is set forth in Paragraph 41 of her amended complaint, where she alleges as follows:

> 41.    However, Mr. DeGroot, along with Mr. Throenle, received communications from Chief Jennings and/or other Chocolay Township representatives before the criminal complaint was filed against Mrs. Mulcahey. Mr. DeGroot and Mr. Throenle knew, or should have known, from those communications that many of the allegations in Mrs. Hillstrom's police report were false or made recklessly without any regard for their truth. Consequently, Mr. DeGroot and Mr. Throenle knew, or should have known, that further investigation into Mrs. Hillstrom's allegations was warranted.

(ECF No. 52, PageID.365, ¶ 41.)

This claim amounts to an allegation of failure-to-act rather than encouragement of the specific incident of misconduct.  Plaintiff might argue that DeGroot and Throenle's general dislike of Plaintiff was well known, and that Jennings and Carter acted on their spoken or unspoken desires. As a starting point, this argument is simply too speculative.  More importantly, given the history of this case, this argument would not be sufficient simply because the Court has already dismissed Plaintiff's conspiracy claim.  The undersigned previously noted that "[t]he proposed amended complaint outlines a number of putative overt acts, but simply does not set forth the particulars *of the agreement*, i.e., when it was made, by whom, and perhaps most importantly, *why*." (ECF No. 44, PageID.321.)  The District Court

14

agreed with this assessment and dismissed the conspiracy count.  (ECF No. 51; *see also* ECF 55 (order denying first motion for reconsideration), ECF 60 (order denying second motion for reconsideration).)

Accordingly, the undersigned respectfully recommends dismissal of Counts 1 and 8 as to Defendants DeGroot and Throenle pursuant to Fed. R. Civ. P. 12(b) for failure to state a claim upon which relief may be granted.  If the Court adopts this recommendation, then Township Manager DeGroot and Zoning and Planning Administrator Throenle will be dismissed from the case.

### 2.  Claims against Chocolay Township

Plaintiff names Chocolay Township as a defendant in Counts 2 and 8 of the Amended Complaint.[3]  (ECF No. 52, PageID.367-68, ¶¶ 55-65.)  Count 2 incorporates the earlier paragraphs in the amended complaint.  Thus, this count asserts Fourth and Fourteenth Amendment violations against Chocolay Township.  And, in general terms, Count 2 alleges that Chocolay Township is liable for the conduct of its employees under the *Monell* doctrine based on (1) its knowledge of the propensity of its employees to engage in unconstitutional conduct, (2) its failure to safeguard against this conduct, (3) its tacit approval of this conduct, (4) having policies, customs, patterns and practices that allowed and caused its employees to engage in unconstitutional conduct, (5) its failure to train its employees, and (6) being the moving force behind the unconstitutional conduct of its employees.  Count 8 asserts

---

[3]    It is not clear that Count 8 – the malicious prosecution claim – applies to Chocolay Township.  But, out of an abundance of caution, the undersigned assumes that it does.

that all of the defendants except Hillstrom maliciously prosecuted Plaintiff in violation of the Fourth Amendment.  (*Id*., PageID.371-72, ¶¶ 90-93.)

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities could be subject to Section 1983 actions for alleged constitutional violations, albeit in a narrow set of circumstances. "A municipality may not be held liable under § 1983 on a *respondeat superior* theory – in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003).

Plaintiff alleges that the alleged constitutional violations were caused by Chocolay Township's policies, customs, practice, or procedures. To assert this theory, Plaintiff must allege facts showing: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that Chocolay Township had notice or constructive notice of such; (3) that Chocolay Township tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Craigo v.*

*Behnke*, No. 1:18-cv-739, 2019 WL 4017983, at *3 (W.D. Mich. July 29, 2019), *report and recommendation adopted,* 2019 WL 4013465 (W.D. Mich. Aug. 26, 2019).

The amended complaint falls far short of alleging a <u>specific</u> custom, policy, practice, or procedure that resulted in the alleged unconstitutional conduct described in the general allegations of the amended complaint (ECF No. 52, PageID.358-66, ¶¶ 10-50) or the specific counts of the amended complaint.  Plaintiff has not alleged a pattern of illegal activity attributed to Chocolay Township, nor constructive notice of illegal activity, nor tacit approval of illegal activity, nor a custom, policy, practice, or procedure that caused the alleged deprivation of rights.  In short, Plaintiff uses all the right general terms, but fails to allege any specifics whatsoever.

Plaintiff also alleges that Plaintiff alleges that Chocolay Township failed to train, supervise, provide direction, or monitor its employees. To assert this lack-of-training theory of liability, Plaintiff must factually allege that (1) the training or supervision was inadequate; (2) due to Chocolay Townships's deliberate indifference; (3) and the inadequate training or supervision was closely related to or caused the injury. *Annabell II v. Jackson County*, No. 22-cv-12189, 2024 WL 4183302 at *5 (E.D. Mich. June 26, 2024), *report and recommendation adopted*, 2024 WL 3935425, *2-3 (E.D. Mich. Aug. 26, 2024).  To impose liability on Chocolay Township under a lack-of-training theory, Plaintiff must provide "past examples of constitutionally inadequate treatment" or explain "how the training program's alleged weaknesses were so obvious as to put [Chocolay Township] on notice that a constitutional violation was likely." *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018).  In

17

the opinion of the undersigned, Plaintiff has failed to set forth any examples of training or lack of training by Chocolay Township that could have led to the deprivation of Plaintiff's constitutional rights.

Under this lack-of-training theory of liability, however, Plaintiff can show deliberate indifference when a single incident results in a constitutional violation that is so obvious or foreseeable that Chocolay Township was deliberately indifferent for failing to prepare its employees to handle it. *Victor v. Reynolds*, 582 F.3d 516, 523 (E.D. Mich. 2022); *Annabell II*, 2024 WL 3935425 at *2-3. Plaintiff simply alleges that Chocolay Township failed to train, monitor, instruct, direct, discipline, and supervise its employees. Plaintiff's allegation is conclusory. In the opinion of the undersigned, Plaintiff's failure to allege facts supporting its lack-of-training theory fails to state a claim under a single incident theory of liability. (*Id.*)

Accordingly, the undersigned respectfully recommends that the Court dismiss Counts 2 and 8 with respect to Chocolay Township pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. If the Court adopts this recommendation, then Chocolay Township will be dismissed from the case.

### 3. Claims against Chief Jennings and Officer Carter

Plaintiff alleges that Chief Jennings and Officer Carter violated her rights under the Fourth and Fourteenth Amendments (Count 1) and maliciously prosecuted her (Count 8). Defendants argue that they are entitled to dismissal of these counts based upon qualified immunity. And the critical component of their argument is that a magistrate found probable cause and authorized the criminal complaint. (*See* ECF

No. 53, PageID.375 ("Plaintiff's claims of unreasonable search and seizure, false arrest/imprisonment, and malicious prosecution all fail because probable cause existed, as confirmed by a magistrate")).  Plaintiff asserts that the criminal complaint is wholly lacking in probable cause.

Based on the arguments set forth by the parties, this Court's assessment of the magistrate's probable cause decision is critical to deciding Defendants' motion to dismiss as to Chief Jennings and Officer Carter.  Indeed, proof that probable cause was lacking is one of the elements of the § 1983 malicious prosecution claim set forth in Count 8.  *See King v. Harwood*, 852 F.3d 568 (2017) (citing *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) and *Sykes*, 625 F.3d at 309–10)).

The documents available to the Court in the record raise questions about the probable cause determination.  First, it is not clear exactly what the magistrate reviewed in order to make a probable cause determination.  The criminal complaint provided to the Court does not include a continuation or probable cause statement other than a short paragraph included in the body of the complaint and repeated in the warrant.  The paragraph in the complaint is shown below.

The complaining witness says that on the date and at the location described, the defendant, contrary to law,

**COUNT 1:  STALKING**
did engage in a willful course of conduct involving repeated or continuing harassment of Liz Hillstrom, the conduct being such that would cause a reasonable person to feel intimidated, or threatened, or harassed, or molested, and such conduct did cause Liz Hillstrom to feel intimidated; contrary to MCL 750.411h.  [750.411H]
MISDEMEANOR:  1 Year and/or $1,000.00; up to 5 years probation

(ECF No. 28-3, PageID.215.)  This statement includes no relevant facts other than the alleged victim's name.  In the opinion of the undersigned, this statement would

not be sufficient to establish probable cause since it simply tracks the language of the statute and provides no other information other than the name of the victim.

In addition, the officer attesting to this complaint – Officer Carter – swore that the contents of the complaint were true to the best of his information, knowledge, and belief.  (*Id*.)  But Officer Carter was not the investigator in the case and his name does not appear in the investigative report.  (ECF No. 28-2.)   Chief Jennings's confirms Carter's lack of involvement during his deposition.   (ECF No. 56-1, PageID.439-40.)

The aforementioned observations, which are based on the documents presented to the Court, are sufficient to give the undersigned significant concerns about the magistrate's probable cause determination.   These concerns are best addressed in discovery and then, if appropriate, a motion for summary judgment.  At this juncture, however, the undersigned cannot find that Chief Jennings and Officer Carter are entitled to qualified immunity with respect to the claims in Counts 1 and 8 based on the magistrate's probable cause determination.   Therefore, the undersigned respectfully recommends that Defendants' motion to dismiss be denied as to Counts 1 and 8 with respect to Chief Jennings and Officer Carter.

## III. Conclusion

The undersigned respectfully recommends that the Court grant the motion in part and deny it in part as follows:

- grant the motion as to Defendants DeGroot and Throenle and dismiss them from the case;

- grant the motion as to Chocolay Township and dismiss it from the case; and

- deny the motion as to Chief Jennings and Officer Carter.

If the Court adopts this recommendation, Chocolay Township, DeGroot and Throenle will be dismissed from the case.  The case will continue on Counts 1 and 8 against Chief Jennings and Officer Carter.


Dated:   February 7, 2025                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE


NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).